UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICKEY J. CRITTON,

       Petitioner,

  v.                                                 Case No. 03-C-1423

DANIEL J. BENIK,

       Respondent.

**DECISION AND ORDER**

       A Milwaukee County jury found Petitioner Mickey J. Critton guilty of possession of cocaine with intent to deliver as a second or subsequent offense and possession of a firearm by a felon. The trial court imposed a thirty-two-year sentence, which Critton is now serving at Stanley Correctional Institution. Critton claims that his conviction and sentence were the fault of his attorneys, both at and after his trial. Upon exhausting his state court remedies, Critton filed a timely petition for habeas corpus pursuant to 28 U.S.C. § 2254, which is why the case is now in federal court. He claims that the representation provided by his attorneys was so deficient as to deprive him of his Sixth Amendment right to counsel and that the circuit court violated his right to due process in denying his second motion for post-conviction relief without holding an evidentiary hearing. For the reasons that follow, his petition will be denied.

**I. FACTS**

       On December 2, 1997, several members of the Milwaukee Police Department went to a Milwaukee home to investigate a complaint about drug dealing. Two officers approached the front

door, intending to conduct a "knock and talk," which means knock on the door and question whoever answers the door. Two other officers were at the side door and a fifth was watching both doors from a corner of the house.

As the two officers stepped onto the front porch, a man opened the door from the inside and exited. The officers identified themselves as police officers and asked the individual if he lived there. While they were talking, one of the officers, Officer Lea, observed another man inside the house stand up and pull a gun from his waistband. When the armed man saw Officer Lea, he ran to the back of the house. Officer Lea shouted to the other two officers at the side door that a man with a gun was running to the rear of the house. The two officers then entered and observed Critton with a gun. He was ordered to drop the gun and get down, which he ultimately did. As he was lying face down on the floor, Officer Lea saw him toss a plastic bag toward a heating vent. The bag was recovered and found to contain thirteen separately packaged rocks of crack cocaine and one package of powder cocaine. Police also found $2,301 in Critton's pockets.

Prior to trial Critton moved to suppress the evidence seized from him on the ground that the police had entered the residence and seized him without consent or probable cause. No hearing on the motion was conducted prior to trial. After an off-the-record conference with counsel, the trial court decided not to have a pretrial hearing on the motion. A pretrial ruling was not needed, the court concluded, because the witnesses who would be called to testify would be testifying at trial and could provide information relevant to the motion at that time. In addition, the trial court believed, based on an offer of proof, that the defendant did not have standing to challenge the police entry because he did not live at the house and thus lacked any expectation of privacy. The trial court advised the parties that if Critton was able to establish at trial that he had a reasonable expectation

of privacy in the home, it would hear additional evidence outside the jury's presence and consider the motion at that time.

Critton later pled guilty to the firearm charge, but proceeded to trial on the drug charge. The prosecutor had offered to recommend a sentence of eight years on the drug charge if Critton entered a guilty plea. Although his attorney recommended that he accept the offer, Critton wanted to see what the court's ruling on his motion to suppress would be before deciding. Even after it was clear that the trial court did not intend to decide the motion until after the trial had commenced, Critton refused to change his plea.

Based on the evidence presented at trial, the court concluded that Critton had failed to establish a reasonable expectation of privacy in the home and denied the motion to suppress. The court found that the home belonged to another person and the evidence showed only that Critton was present when police arrived. In the trial court's view, that wasn't enough to confer standing upon him to challenge the police entry. The jury then found Critton guilty of possession with intent to deliver between 15 and 40 grams of cocaine.

Sentencing was scheduled for April 29, 1998. After listening to the arguments of the attorneys, the trial court adjourned the sentencing so that the parties could determine what Critton's sentence would be if he were sentenced under the United States Sentencing Guidelines. The court felt that such information might be useful for it to consider in determining an appropriate sentence for Critton in this case. The court reconvened the sentencing hearing on May 13, 1998, and sentenced Critton to 30 years in prison on the drug charge and two years to be served consecutively on the firearms charge. The court explained that it considered the traditional sentencing factors, including the seriousness of the offense, the character and background of the criminal and the protection of the community. (Resp. at 2.)

3

On May 10, 1999, Critton, represented by new counsel, filed a motion for a new trial pursuant to Wis. Stat. § 809.30. He claimed that the trial court had erred when it found he lacked standing to challenge the police entry into the home. He also asserted that the evidence was insufficient to support his conviction and that the trial court abused its discretion in sentencing him to 32 years in prison. In support of his motion, Critton filed an affidavit to which he attached a portion of the transcript from his parole hearing which he claimed supported his assertion that he was an overnight guest at the home where he was arrested and thus had standing to challenge the police entry. The trial court denied the motion.

On August 3, 2000, the Wisconsin Court of Appeals summarily affirmed Critton's conviction and the denial of his post-conviction motion. (Ex. F.) The court concluded that the trial court did not err in ruling that Critton lacked standing to challenge the police entry into the residence because the evidence failed to establish he was an overnight guest. In so ruling, the court refused to consider the transcript of Critton's parole revocation hearing because that evidence was not before the trial judge. The evidence that was presented showed at most that Critton was present when police arrived. Based on the evidence that was presented, the court held that the trial court did not err. The court also rejected Critton's arguments that the evidence was insufficient to support his conviction of the drug charge and that the trial court abused its discretion in sentencing him. The Wisconsin Supreme Court subsequently denied a petition for review of the Court of Appeals' decision. (Ex. I.)

On October 15, 2001, Critton, now appearing *pro se*, filed a post-conviction motion for a new trial pursuant to Wis. Stat. § 974.06 in which he alleged that both his trial and post-conviction counsel were ineffective. Trial counsel was ineffective, he alleged, in failing to adequately investigate the facts relating to his suppression motion; in failing to properly advise him on whether

4

to accept the State's plea offer before the suppression motion was decided; and in incorrectly advising him that under the federal sentencing guidelines he would receive a sentence of between eleven and fourteen years. Post-conviction counsel was ineffective, Critton claimed, in failing to raise the issue of trial counsel's ineffectiveness on appeal and in assuring Critton that the transcript of his parole revocation hearing could be made a part of the appellate record simply by attaching them to his affidavit.

The circuit court denied Critton's motion without a hearing. In rejecting Critton's claim that his attorney was ineffective in failing to establish that he was an overnight guest at the residence and thus had standing to challenge the police entry, the circuit court held that even if Critton had established that he had standing for his suppression motion, he could not prove that the police entry was illegal. In fact, the court noted, the evidence clearly showed that the entry was made under exigent circumstances when the man with the gun was seen running to the back of the house. Thus, he suffered no prejudice, even if counsel's performance had been deficient. The court also rejected Critton's claims that his trial attorney had been ineffective in advising him regarding the State's plea offer and in her estimate of what his sentence would be under the federal sentencing guidelines. Finally, the court found that post-conviction counsel had entered the transcript of Critton's revocation hearing into the record, and thus he had not been ineffective either.

The Wisconsin Court of Appeals again summarily affirmed the circuit court's decision. (Ex. M.) It concluded that even if Critton's parole testimony was accepted as true, he still lacked standing to challenge the police entry. Since he offered no other facts that further investigation by his trial attorney would have established, the court found that he failed to establish that he had been harmed by his trial attorney's performance.

5

The court likewise rejected Critton's claim that his trial attorney had failed to fully advise him of the ramifications of the State's plea offer. The court noted that his trial counsel had repeatedly advised Critton to accept the State's plea offer. Critton refused to accept the offer because he wanted to see if he prevailed on the motion to suppress. The decision to postpone the hearing on the motion until trial was the trial court's, not counsel's, and the Court of Appeals found no err in counsel's "strategic decision not to object to the trial court's preferred and reasonable choice in litigating the suppression motion during trial." (Ex. M at 7-8.) Under these circumstances and since Critton failed to allege he made any effort to renew his negotiations with the State even after the trial court formally denied his motion, the court concluded that facts alleged by Critton did not show ineffective assistance of counsel.

As to Critton's claim that his attorney misinformed him regarding what his sentence would be under the federal sentencing guidelines, the Court of Appeals found that even if true, the misinformation caused no harm. There is no allegation that the allegedly erroneous advice played any role in Critton's decision to go to trial. The issue appears to have first surfaced at sentencing because the trial court felt that the State's sentencing recommendation appeared high. (Ex. M at 9, n. 6.) Since the Court of Appeals had already ruled in its decision affirming his conviction and sentence that the trial court had not erred in considering the federal guidelines, it concluded that "counsel's allegedly erroneous advice on the guidelines was inconsequential." (*Id.* at 9.)

Finally, the Court of Appeals rejected Critton's claim that his post-conviction counsel was ineffective in assuring him that by attaching the transcript of his parole revocation hearing to his post-conviction motion, it would be a part of the appellate record. No ineffective assistance could be shown, the court held, because counsel's assurance was correct. (*Id.*) The transcript was a part of the appellate record. Although the appellate court declined to consider it on direct appeal in

6

Case 2:03-cv-01423-WCG   Filed 04/22/05   Page 6 of 16   Document 17

deciding whether the trial court had erred in denying his motion to suppress, the court noted that since it had now held that it would not have changed the result in any event, the alleged error was likewise inconsequential. For these reasons, the Court of Appeals affirmed the circuit court's denial of Critton's post-conviction motion, and again the Wisconsin Supreme Court denied his petition for review.

Thereafter, Critton filed the instant petition for federal habeas corpus. In it he raises the same four claims of ineffective assistance of counsel that he raised in his most recent post-conviction motion. He also claims that the trial court erred by denying his post-conviction motion without granting him a hearing.

### III. ANALYSIS

A federal district court may not grant a petition for a writ of habeas corpus filed on behalf of a person who is in custody pursuant to the judgment of a State court with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Critton's petition for habeas corpus fails under this standard. He has failed to demonstrate that the decisions of the Wisconsin courts are contrary to or involved an unreasonable application of clearly established federal law, or that they involved an unreasonable determination of the facts in light of the evidence presented.

7

Four of the five grounds for relief asserted in Critton's petition involve claims of ineffective assistance of counsel. Federal law concerning such claims was clearly established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* set forth the familiar two-part test for determining whether ineffective assistance has been shown:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

Because both deficient performance of counsel and prejudice to the defense must be shown, it is not always necessary to discuss both components. Where one component is clearly missing, there is often no need to discuss the other. As *Strickland* itself advised, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697. And where a state prisoner's claim of ineffective assistance is reviewed under the deferential standard of review required by 28 U.S.C. § 2254(d), "only a clear error in applying *Strickland*'s standard would support a writ of habeas corpus." *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1053 (7th Cir. 2001). Such heightened deference applies "because *Strickland* builds in an element of deference to counsel's choices in conducting the litigation and § 2254(d)(1) adds a layer of respect for a state court's application of the legal standard." *Id.*

The record in this case shows that the Wisconsin courts applied *Strickland* in assessing Critton's claims that he had been denied his Sixth Amendment right to the effective assistance of

8

counsel. As to the claim that his trial attorney had failed to investigate the circumstances surrounding his presence at the residence so as to establish that he did have standing to challenge the police entry, the circuit court explicitly cited *Strickland* and concluded that even if Critton could establish that his trial counsel's performance was deficient, his claim nevertheless failed because there was no prejudice. There was no prejudice, the court concluded, because even if Critton did have standing to challenge the entry, his motion to suppress would have failed because the entry of the police officers was justified by the exigent circumstances they confronted. Citing *Michigan v. Tyler*, 436 U.S. 499, 509 (1978), the circuit court noted that a warrantless entry to a residence is justified "when there is compelling need for official action and no time to secure a warrant." *See also Warden v. Hayden*, 377 U.S. 294, 298-299 (1967) ("The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others."). Applying these principles to the facts of the case, the circuit court concluded that "[t]here is no question that exigent circumstances justified a warrantless entry in this case, and there is not a reasonable probability, based on the evidence before it, that the trial court would have found that the entry was illegal." (Ex. J, App. at 6.)

The Wisconsin Court of Appeals likewise applied *Strickland* in rejecting this claim. Only instead of assessing whether the underlying entry was lawful, the Court of Appeals analyzed Critton's claim that he had standing to challenge the entry in light of the evidence he claims his attorney failed to offer. The court summarized Critton's testimony from his parole revocation hearing:

> Critton came to the house (where he was arrested) an average of twice per week. That evening, he had fallen asleep on the living room couch wearing his glasses, with his finger on the trigger of a gun he had in his pocket. During cross-examination, he testified that he was "[n]ot sound asleep.... [He] was nodding off and on. [He] had a hangover. [He] was trying to rest [his] eyes."

9

(Ex. M at 6.) Even if Critton's testimony at his parole revocation hearing would have been accepted as true, the court concluded the result would have been the same: "Nodding off on someone else's living room couch, with your glasses on and your finger on the trigger of a gun, does not establish an actual, much less a justifiable expectation of privacy." (*Id.*) Thus, the court concluded that Critton had failed to establish the prejudice component of his ineffective assistance claim.

Critton argues that the state courts' decisions are contrary to clearly established federal law. In support of his argument, he cites *Minnesota v. Olson*, 495 U.S. 91 (1990), which held that an overnight guest in another person's home has a reasonable expectation of privacy and can therefore claim the protection of the Fourth Amendment. Critton cites not only his own testimony at his parole hearing, but also affidavits from Willie and Earline Smith, the owners of the home in which the search took place, in support of his contention that he was an overnight guest at the home on the date of the police entry. The affidavits of Mr. and Mrs. Smith, which Critton filed in support of his second motion for post-conviction relief, confirm his claim that he was an overnight guest. Critton contends that his attorney never spoke with the Smiths and never explained the concept of standing to him. His trial attorney's failure to present this evidence to the trial court and his post-conviction attorney's failure properly to present it in support of his motion for post-conviction relief, Critton contends, clearly establish that they were ineffective. The state courts' denial of his motion without even allowing a hearing, he contends, was erroneous and contrary to *Olson*.

Critton's argument is not entirely without merit. The evidence he cites does support his claim that he was an overnight guest at the home in question. Under *Olson*, no more is required to establish standing. Critton's trial attorney was never questioned concerning why she failed to offer this evidence to the trial court, at least in the form of an offer of proof. Post-conviction counsel appears to have argued on the basis of evidence not part of the trial record that the trial court had

10

erred in concluding Critton lacked standing. On Critton's initial appeal, the Court of Appeals properly concluded that evidence that had not been brought to the trial court's attention was irrelevant to the issue of whether the trial court had erred in finding no standing. For the evidence that had not been offered earlier to be relevant, post-conviction counsel would have had to assert a claim that trial counsel was ineffective in failing to offer it. He failed to do so. And when Critton attempted to assert such a claim in his second *pro se* motion for post-conviction relief, the court summarily denied his motion without a hearing. Thus, it appears that the record has not been fully developed concerning this issue.

Respondent argues it doesn't matter. Even if the state courts erred in holding that Critton lacked standing, respondent argues, Critton's claim of ineffective assistance would still fail because, as the second post-conviction court held, he would not have prevailed on the merits in any event. That court had held that the warrantless entry was justified by the exigent circumstances the police confronted when they arrived at the house. Since the warrantless entry was clearly justified, any error on whether Critton had standing to raise such a claim was harmless.

The problem with this argument, of course, is that there never was any hearing on the merits of Critton's motion to suppress. As Critton points out, because the trial court concluded that he lacked standing to assert a Fourth Amendment claim, it denied his motion without a hearing. Critton never had the opportunity to challenge the police version of the facts leading up to the warrantless entry. His attorneys' incompetence, and the state court's erroneous rulings, he contends, robbed him of the opportunity to challenge the unlawful entry.

But it is not enough at this stage for Critton simply to claim he was denied a hearing on his motion. To show prejudice, he must provide some indication of what evidence he would have presented if a hearing had been held. Absent some idea as to what evidence he would have offered

11

to rebut Officer Lea's testimony that he saw a man inside the house pull a gun, it is impossible to determine that Critton suffered prejudice as a result of being denied such a hearing. And absent a showing of prejudice, Critton is not entitled to relief under § 2254.

Critton has offered nothing in this regard. He argues that the merits of his Fourth Amendment claim are irrelevant, claiming "this issue has never been about the merits of his suppression motion and he has not made any argument as to that fact." (Reply at 3.) The prejudice he suffered, according to Critton, is not that his motion to suppress was improperly denied, but that the trial court's ruling was made too late for him to take advantage of the plea offer that the prosecutor had made before trial. As stated in his initial brief, "Critton asserts that he would have accepted the (8) eight year plea recommendation offered by the state had he had a pre-trial hearing on his motion, and if that motion were denied." (Pet'r's Br. at 18.)

Of course, even if Critton had accepted the prosecutor's offer and plead guilty prior to trial, there is no guarantee that the trial court would have sentenced him to only eight years. In Wisconsin, the trial court is not bound by the plea agreement of the parties and is free to sentence the defendant to a fair and just sentence based on its own determination of what that might be, taking into consideration the traditional sentencing factors such as the seriousness of the offense, the need to protect the public, and the character of the defendant. *Melby v. State*, 234 N.W.2d 634, 643 (Wis. 1975) (upholding sentence of six years despite plea agreement calling for recommendation for no more than three years); *see also State v. Smith*, 558 N.W.2d 379, 388-89 n. 14 (Wis. 1997).

But even if Critton could prove that he would have received a lesser sentence by pleading guilty before trial, his claim would still fail. It would fail for the simple reason that it was not counsel's fault that the trial court chose to delay ruling on his motion until after trial had

12

commenced. Wisconsin trial courts, like all trial courts, have broad discretion in deciding the manner in which cases are tried. *See Latham v. Casey & King Corp.*, 127 N.W.2d 225, 226 (Wis. 1964) ("Every court has inherent power, exercisable in its sound discretion, consistent within the constitution and statutes, to control disposition of causes on its docket with economy of time and effort."). Here, the trial court concluded it would be more efficient to delay its decision on the motion to suppress until trial since the same witnesses would be testifying at that time and it did not appear from what was revealed in chambers that Critton had standing to challenge the entry in any event. The Wisconsin Court of Appeals found that "[d]efense counsel made the strategic decision not to object to the trial court's preferred and reasonable choice in litigating the suppression motion during trial." (Ex. M at 7-8.) That finding is not an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). And under *Strickland*, strategic decisions by counsel, unless clearly unreasonable, do not constitute ineffective assistance. 466 U.S. at 689-90.

Critton's criticism of his trial counsel is even more misplaced in light of the fact that, by his own admission, counsel advised him to accept the state's plea offer "on several occasions." (Ex. J. at 20.) She had made such a recommendation as recently as the morning of trial. Critton refused, however, stating he wanted to wait until the court decided his motion to suppress. Yet, even after the court decided the motion, there is no evidence in the record that Critton made any attempt to accept the state's plea offer. According to the Court of Appeals, "at no time did Critton explore whether the State's plea proposal remained viable." (Ex. M at 8.)

In light of the foregoing, I conclude that the Wisconsin courts' rejection of Critton's claim that the assistance provided by his attorneys with respect to his Fourth Amendment claim was constitutionally deficient is neither contrary to, nor does it constitute an unreasonable application of, clearly established federal law. The state courts' determination that he was not prejudiced by

13

his attorneys' performance was based on a reasonable application of *Strickland*. It does not reflect the kind of "clear error," *Ouska*, 246 F.3d at 1053, required to establish a right to relief under 28 U.S.C. § 2254.

I also note, however, that even if his attorneys had performed deficiently and, as a result, illegally obtained evidence was admitted, Critton's claim of ineffective assistance of counsel on that basis would still fail. As noted above, to prevail on a claim of ineffective assistance of counsel, Critton would have to show that his attorneys' performance fell below objective standards of representation, and that such deficiencies were prejudicial to the outcome of the trial. *Strickland*, 466 U.S. at 688-91. A showing of prejudice in the sense *Strickland* requires means that there were "unprofessional errors so egregious that the trial was rendered unfair and the verdict rendered suspect." *United States v. Jones*, 152 F.3d 680, 688 (7th Cir.1998) (internal quotes omitted). The Seventh Circuit has repeatedly held that "[i]n cases where an attorney's mistake resulted in the admission of evidence that would have otherwise been suppressed, the outcome of the trial does not become any less reliable." *United States v. Hernandez-Rivas*, 348 F.3d 595, 601 (7th Cir. 2003), and cases cited therein. In other words, if the admission of illegally obtained evidence does not raise any question as to the reliability of the conviction, no prejudice in the sense required by *Strickland* has been shown. For this reason, too, Critton's claim of ineffective assistance as it relates to his Fourth Amendment claim fails.

Critton also claims his attorneys were ineffective in failing to assist him in deciding whether to accept a plea offer, erroneously estimating his likely sentence, and failing to assure that his parole revocation hearing transcript would be properly included in the record on appeal. Except for the claim that his attorney erroneously estimated his sentence, I have already addressed these claims in the context of his Fourth Amendment claim. They fare no better when viewed separately. The

14

claim that his trial attorney failed to advise him properly concerning the plea offer fails factually because the record demonstrates unequivocally that his trial attorney told him of the plea offer and repeatedly advised him to accept it. As already noted, it wasn't his attorney's fault that the trial court decided to withhold ruling on the motion until trial. Critton obviously decided to risk waiting anyhow. The fact that he failed to accept the state's offer was not due to poor advice from his attorney.

Likewise, Critton's claim that trial counsel was ineffective because she inaccurately predicted what his sentencing range would be under the United States Sentencing Guidelines fails because it had no impact on Critton's decision to go to trial. Counsel only estimated the range after Critton was convicted and the trial court inquired what his sentence would be if he had been prosecuted in federal court. This is not the kind of mistake that would cause one to lose confidence in the result of the trial or sentencing. It simply was not prejudicial.

And Critton's claim that his post-conviction counsel was ineffective because he erroneously assured him the transcript of his parole revocation hearing would be part of the appellate record fails because, as already noted, he suffered no prejudice as a result. Even when the transcript was considered by the state courts in his subsequent post-conviction motion and appeal, the result was the same. And, of course, counsel's advice regarding the transcript, whether deficient or not, does not raise any doubt as to the reliability of his conviction.

Finally, Critton claims that the court that denied his second post-conviction motion violated his right to due process by not allowing him a hearing. The court summarily denied the motion because it concluded that even if the facts alleged were true, Critton was not entitled to relief under Wis. Stat. § 974.06. Where the facts alleged do not entitle a petitioner to relief, there is no reason to hold an evidentiary hearing. That was what the state court concluded here, and its decision is not

15

Case 2:03-cv-01423-WCG    Filed 04/22/05    Page 15 of 16    Document 17

contrary to clearly established federal law.  In fact, federal law also permits a trial court to determine a motion for post-conviction relief without holding an evidentiary hearing.  *See* 28 U.S.C. § 2255. Accordingly, this claim also fails.

In sum, Critton has not shown that the state court's decision was contrary to or involved an unreasonable application of *Strickland*.  He has failed to demonstrate that trial or post-conviction counsel's performance was deficient and prejudiced his defense.  And the summary denial of his second motion for post-conviction relief did not deprive him of any constitutional right clearly established under federal law.

**IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the action **DISMISSED**.

Dated this   22nd   day of April, 2005.

                                    s/ William C. Griesbach
                                    William C. Griesbach
                                    United States District Judge